No. 44.—James Adams, adm'r. of Amos Rose, plaintiff in error, *vs.* Ninian Barrett, defendant in error.

[1.] To render a witness incompetent on the ground of interest, it must be shown that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action.

[2.] The interest to exclude a witness, must be a present, certain and vested interest, and not an interest uncertain, remote, or contingent.

[3.] A witness is always presumed to be competent, and the burden of proof to show his incompetency, is on the objecting party.

[4.] Where a witness entered into a covenant to guaranty and protect the title to certain land against mortgages, judgments, or legal liabilities, which could operate as a lien or incumbrance on said land, it was *held*, that it was incumbent on the party objecting to the competency of the witness, to show affirmatively, that there was actually in existence, at the time of the trial, some mortgage, judgment, or legal liability, which could operate as a lien, or incumbrance, in order to exclude the witness on the ground of interest.

In Equity. Upson Superior Court. Tried before Judge Floyd. April Term, 1847.

For the facts of the case, and the points made and determined, the reader is referred to the opinion delivered by the Supreme Court.

A. H. CHAPPELL, for the plaintiff in error.

O. C. GIBSON, for the defendant in error.

In support of the decision below, defendant in error submits, that the witness, Thomas F. Bethel, was properly excluded, because he is interested both in the event of the suit and in the record : he is interested to discharge his liability created by his *guaranty*, which would be done by a verdict for the plaintiff in error ; which discharge would be manifest in a suit on his *guaranty* by defendant in error, by an exhibition in his defence of this record. *Greenl. on Ev. secs.* 404, 390, 392, 393, 395, 397; 2 *Har. & Gill R.* 176; 6 *Greenl. R.* 416, 420; 2 *Nott & McCord R.* 153, 156; 1 *Bailey R.* 49, 364; 1 *T. R.* 296.

Nor can the witness remove his interest, but the *contract*, which in this case makes him *quasi* a party, must *speak*, and must *settle* the question of his interest. *Greenl. on Ev. secs.* 422, 423, 387 ; 2 *Bailey R.* 473.

And in all cases a *release* to restore competency, must be, made by the party to whom he is liable. 1 *Bailey R.* 364.

POE & NISBET, for the defendant in error.

To the first ground of error, counsel for the defendant in error reply—

That the witness was directly interested in the result of the cause in which he was called to testify, because if by his testimony the deed should be decreed to be cancelled, Bethel, the witness, would be *ipse facto* discharged from his liability on his covenant to save defendant in error harmless.

All persons who have an actual legal interest in the result of a suit, are incompetent to testify. 1 *Greenl. Ev. secs.* 386, 392, 393 ; 1 *Starkie Ev.* 19, 20 ; 1 *Phil. Ev.* 36.

The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment. 1 *Greenl. Ev. sec.* 390 ; 1 *Kelly* 405.

Illustration of the nature of the direct interest that disqualifies the witness : 1 *Greenl. Ev. secs.* 392, 393 ; 3 *Starkie R.* 132 ; 1 *T. R.* 164 ; 1 *Greenl. Ev. sec.* 397.

In reply to the second ground of error, counsel for the defendant in error contend—

That the refusal of ·the Court below to permit the plaintiff in error to examine the witness rejected, to be sworn and examined on his *voir dire*, was proper, because the test of the witness's competency had been determined by the instrument to which the witness was a party, and it was not competent for the party offering him to attempt to sustain him on the *voir dire*. 1 *Greenl. Ev. secs.* 422, 423 ; *Mott* vs. *Hicks*, 1 *Cowen R.* 513.

*By the Court.*—WARNER, J., delivering the opinion.

It appears from the record in this cause, that a bill was filed in the Court below by the plaintiff in error, to cancel and set aside a deed executed by his intestate to the defendant in error, for a settlement of land in the county of Upson, on the ground, that the consideration for which said deed was executed was illegal. The deed conveying the land to the defendant in error, was executed by Rose, on the 12th day of March, 1842, by his attorneys in fact, and contained a general warranty of title.

Afterwards, on the 24th day of March, it appears, that James Adams and Thomas F. Bethel, for certain considerations therein expressed, executed under their hands and seals the following guaranty. After reciting that Rose had bargained and sold the aforesaid settlement of land, mentioned in the deed from Rose to Barrett, the instrument contains the following clause :

" The said James Adams and Thomas F. Bethel, the said bargained lands sold as aforesaid unto the said Ninian Barrett, hath agreed to guarantee and protect, and do by these presents guarantee, and will protect, the right and title to said lands unto said Ninian Barrett, his heirs, executors and administrators, against all and every mortgage, debt, judgment, execution, or legal liability against said Amos Rose, which could operate as lien or incumbrance upon said land, or destroy the title of said Ninian Barrett derived as aforesaid, and which said mortgage, debt, judgment, execution, or legal liability were in being at the time of making said deed of conveyance to said Ninian Barrett, from said Amos Rose by his attorneys in fact, &c."

This latter instrument, with the deed from Rose to Barrett, were attached by the complainant in the Court below as exhibits to his bill. On the trial of the cause in the Court below, the complainant called as a witness, to prove the illegal consideration of the deed from Rose to Barrett, Thomas F. Bethel, whose testimony was objected to by the defendant, on the ground that it appeared by the aforesaid guaranty attached to the bill of complainant, that he was interested in the event of the suit; and the Court being of the opinion that he was interested, so decided, and excluded his evidence. Whereupon the complainant excepted, and now assigns the same for error in this Court.

[1.] Had the witness, Bethel, such an interest in the suit as ought to have excluded him? We think not; and will proceed to state the rule of evidence, and then apply the facts of this case to the rule. In 1 *Greenl. Ev.* 458, *sec.* 390, the rule is stated to be, that " The *true test of the interest* of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some [2.] other action. It must be a *present, certain, and vested interest,* and not an interest uncertain, remote, or contingent. And if the interest is of a doubtful nature, the objection goes to the credit of [3.] the witness, and not to his competency. For being always presumed to be competent, the burden of proof is on the objecting party, to sustain his exception to the competency, and if he fails satisfactorily to establish it, the witness is to be sworn."

[4.] What are the facts relied on, to show that the witness had a " *present, certain, and vested interest*" in the event of the suit. The facts relied on are, that the witness guaranteed under his hand and seal, to protect the right and title to the land conveyed by Rose to Barrett, "against all and every mortgage, debt, judgment, execution, or legal liability against said Amos Rose, which could operate as lien or incumbrance upon said land, or destroy the title of said Ninian Barrett, derived as aforesaid, and which said mortgage, debt, judgment, execution or legal liability were in being at the time of making the deed of conveyance to said Ninian Barrett by Amos Rose." The witness, by his covenant, was bound to protect the title to the land from all mortgages, debts, judgments, executions, or any legal liability against Rose, which could operate as a *lien or incumbrance on said land,* or destroy Barrett's title thereto, or which existed at the time of making the deed from Rose to Barrett. The covenant does not assert there were any *particular*

mortgages, debts, judgments, executions, or any legal liabilities which could or would operate as a lien or incumbrance on the land, but as a general covenant against all mortgages, debts, judgments, executions, or legal liabilities which could operate as a lien or incumbrance on the land conveyed by Rose to Barrett. Now, does it follow as a *necessary legal consequence,* that because the witness covenanted to protect the title to the land against all mortgages, debts, judgments, executions, or legal liabilities which could operate as a lien or incumbrance thereon, that any such mortgages, debts, judgments, executions, or legal liabilities *did in fact exist*? There is none asserted in the instrument to exist, and unless it be shown that there are *in existence* some mortgages, judgments or other legal liabilities, against which Bethel covenanted to protect the land, we cannot readily perceive how he can be made liable on his covenant, or what interest he would have in the event of the suit. The fundamental error in this case is, we apprehend, in assuming that there are mortgages, debts, judgments or legal liabilities which would operate as an incumbrance on the land, and which Bethel by his covenant would be bound to discharge, when no such facts are *affirmatively* shown by the record. Because a man covenants generally against mortgages and all other incumbrances, it does not in our judgment follow, as a necessary legal consequence, that there are *actually in existence* any such mortgages or other incumbrances. The covenanter would only be liable on his general covenant when such incumbrances were actually shown to exist; and if there were *no incumbrances in existence,* against which he stipulated to protect the property, he would not be liable, notwithstanding his general covenant.

It was urged on the argument, that inasmuch as the complainant in the bill sought to set aside the conveyance from Rose to Barrett, a decree to that effect would deprive Barrett of all power to call on Bethel, the guarantor, to protect him against the incumbrances specified in his covenant; for then, he would have no title to the land, and no interest in it which he could enforce; and that Bethel was called as a witness to destroy and set aside the evidence of Barrett's right to maintain an action against him on his covenant.

This position also assumes, that there were mortgages, judgments, or other legal incumbrances, *actually existing,* for which Barrett would be entitled to maintain an action on the covenant against Bethel. Unless there were some mortgages, judgments, executions or other legal incumbrances specified in the covenant,

actually in existence, how would the decree setting aside the deed from Rose to Barrett affect his interest ? The covenant is a general one against *all* incumbrances and liens, which might affect the title to the land, and in order to show that Bethel might be interested in obtaining the decree, so as to release him from the obligations of his covenant, it ought to have been *affirmatively* established that there were incumbrances, or legal liens, which would have constituted a breach of his covenant. If there were no *liens or incumbrances in existence, at the time he was called to testify*, then the decree cancelling the deed, would not alter, increase, or diminish his liability. If it had been shown there was a mortgage, judgment, or other legal liability against Rose, which operated as a lien or incumbrance on the land, at the time of the trial, then we admit, there would have been force in the objection; as in that event, Bethel would have been interested to defeat Barrett's right of action against him, on his covenant, by having his title to the land cancelled and destroyed.

If it had been shown, that at the time of making the covenant, there were incumbrances *actually existing*, · which would have rendered the witness incompetent, yet, if such incumbrances had been *extinguished before the trial*, the witness, in our judgment, would have been competent. The rule, as we have seen, requires that the interest of the witness must be a *present, certain and vested interest; that the witness is presumed to be competent; and that the burden of showing his incompetency on the score of interest, is on the objecting party*. What does the objecting party show here ? He shows that the witness entered into a covenant by which he covenanted to indemnify the covenantee against all mortgages, judgments, or legal liabilities, which could operate as a lien or incumbrance on the land, purchased by Barrett from Rose; but he does not show, there were any mortgages, judgments, or legal liabilities, which could operate as a lien or incumbrance on the land, *at the time the witness was offered to be sworn.*

To have excluded the witness on the score of interest, it was not only necessary to have shown the covenant relied on, but it was incumbent on the objecting party to have also shown that there was a mortgage, debt, judgment, execution, or some legal liability against Rose, which could operate as a lien or incumbrance on the land, or destroy the title thereof, *actually existing* at the time the witness was offered to testify.

It was insisted by one of the counsel for the defendant in error,

that the witness had absolutely covenanted to warrant the title at all events, as well against the decree now sought, as against liens and incumbrances.

· If such had been the legal effect of the covenant, we have only to say, the witness was called to testify *against his own interest,* and was therefore competent; for if the covenant extends to the title of the land, the witness was called to defeat and destroy that title; and in that event, would be liable on his covenant to Barrett, against whom he was called to give evidence.

Professor Greenleaf says: "It is hardly necessary to observe, that where a witness is produced to testify *against his interest,* the rule that interest disqualifies, does not apply, and the witness is competent." 1. *Greenl. Ev.* 479, *sec.* 410.

From the view we have taken of this case, we are of the opinion that the Court below erred in its judgment in rejecting the witness on the ground of interest in the event of the suit. Therefore, let the judgment be reversed, and a new trial granted.